UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| SANDRA MULDROW, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 08-1771 (RMU) |
| | : | | |
| v. | : | Re Document Nos.: | 19, 20 |
| | : | | |
| EMC MORTGAGE CORPORATION *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

GRANTING DEFENDANT EMC MORTGAGE CORPORATION'S MOTION FOR SUMMARY
JUDGMENT; GRANTING DEFENDANT ROSENBERG AND ASSOCIATES LLC'S MOTION FOR
SUMMARY JUDGMENT

**I. INTRODUCTION**

This matter comes before the court on the motions for summary judgment of defendants EMC Mortgage Corporation ("EMC") and Rosenberg and Associates, LLC ("Rosenberg"). The plaintiff alleges that EMC engaged in predatory lending practices, in violation of the District of Columbia Consumer Protection Procedures Act ("DCCPPA"), D.C. CODE §§ 28-3901 *et seq.* The plaintiff also claims that Rosenberg engaged in unlawful debt collection practices, in violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.* In their motions for summary judgment, both defendants argue that the plaintiff has failed to produce sufficient evidence to raise a genuine dispute as to any material facts with respect to her claims. Because the plaintiff has not demonstrated that there are any material facts in dispute, the court grants EMC's and Rosenberg's motions for summary judgment.

## II.  FACTUAL & PROCEDURAL BACKGROUND

In October 2006, the plaintiff obtained a loan from Encore Credit Corporation, a California corporation, secured by a residential property at 1746 E Street, N.E., Washington, D.C.  Compl. ¶ 5; EMC's Mot. for Summ. J. ("EMC's Mot."), Ex. A at 1.  Encore Credit Corporation transferred the servicing of the plaintiff's loan to EMC on December 4, 2006. EMC's Mot., Ex. 1 ¶ 4.  In the spring of 2008, the plaintiff missed several mortgage payments, which resulted in EMC referring the loan for foreclosure.  Compl. ¶¶ 6-7; EMC's Mot., Ex. 1 ¶¶ 5-6.  To initiate foreclosure proceedings, EMC hired Rosenberg as a substitute trustee.  *See generally* Pl.'s Opp'n to Rosenberg's Mot. to Dismiss, Ex. A ("Notice").

On June 23, 2008, Rosenberg sent the plaintiff a notice informing her that the loan had been referred to it "for legal action based upon a default under the terms of the loan agreement" and that a foreclosure sale was scheduled for July 29, 2008.  Notice at 1.  The notice stated the total amount owed by the plaintiff and advised her that she could either take no action and assume the validity of the debt or notify Rosenberg within thirty days that she disputed all or part of the debt.  *Id.*  If the plaintiff contested the debt within thirty days, the notice stated, Rosenberg would suspend collection activities until it obtained verification of the debt and mailed the verification to the plaintiff.  *Id.*  The notice indicated that if the plaintiff did not dispute the debt, she was to send a check to Rosenberg which it would not deposit until after informing the plaintiff of any adjustments in the amount owed.  *Id.*  The notice informed the plaintiff that she might be eligible "to enter into a workout to pay [her] delinquency over a period of time" and instructed the plaintiff to contact Rosenberg to determine if she met the program's qualifications. *Id.* at 2.  Finally, the notice identified one of Rosenberg's representatives as the "[p]erson to contact to stop foreclosure sale," and provided that person's address and telephone number.  *Id.*

Following the procedures set forth in the notice, the plaintiff disputed the debt and requested from Rosenberg the amount necessary to bring the mortgage current. Compl. ¶ 12. The plaintiff then contacted EMC to discuss loan mitigation to stop the foreclosure sale. *Id.* ¶ 13. The plaintiff executed a repayment agreement with EMC on July 28, 2008, after which EMC halted the foreclosure sale. EMC's Mot., Ex. 1 ¶¶ 27-28; Pl.'s Opp'n to Defs.' Mots. for Summ. J. ("Pl.'s Opp'n") at 9. The plaintiff did not make the monthly payments required under the repayment agreement and EMC resumed foreclosure proceedings in September 2008. EMC's Mot., Ex. 1 ¶ 23; *see also* Pl.'s Opp'n at 5.

On September 15, 2008, the plaintiff filed a civil action against EMC and Rosenberg in the Superior Court for the District of Columbia. *See* Compl. In counts one and two of her complaint, the plaintiff accuses EMC of violating the DCCPPA by intentionally misrepresenting material facts regarding the repayment agreement and loan mitigation procedures and failing to state a material fact which misled the plaintiff. Compl. ¶¶ 26-39 In counts three, four and five, the plaintiff accuses Rosenberg of violating the FDCPA by failing to cease and desist in collection efforts after the plaintiff disputed the debt, using false, deceptive and misleading representation or means to collect on the debt and using oppressive and abusive debt collection practices. *Id.* ¶¶ 40-59. Rosenberg removed the action to this court on October 16, 2008. *See* Notice of Removal. On October 23, 2008, EMC filed its answer to the plaintiff's complaint, *see* EMC's Answer, and Rosenberg moved to dismiss the action against it, alleging that it was not a debt collector as defined by the FDCPA, *see generally* Rosenberg's Mot. to Dismiss. On September 28, 2009, the court denied Rosenberg's motion to dismiss. *See generally* Mem. Op. (Sept. 28, 2009).

Rosenberg and EMC now seek summary judgment arguing that the plaintiff has not produced sufficient evidence to support her claims and, as such, that there is no genuine dispute as to any material fact. *See generally* Rosenberg's Mot. for Summ. J. ("Rosenberg's Mot."); EMC's Mot. The plaintiff filed a consolidated opposition to the defendants' motions on June 18, 2010, *see generally* Pl.'s Opp'n, to which the defendants separately replied on June 25, 2010, *see generally* EMC's Reply; Rosenberg's Reply. The court turns now to the parties' arguments and the applicable legal standards.

## III.   ANALYSIS

### A. Legal Standard for Motions for Summary Judgment

Summary judgment is appropriate when the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine dispute" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make

a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006). Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675

### B.  The Court Grants EMC's Motion for Summary Judgment

The plaintiff argues that EMC violated the DCCPPA by failing to inform her that the repayment agreement was not negotiable and that she was required to "tender a $2,500 payment before EMC would enter into a loan mitigation program" with her. Compl. ¶ 37. She contends that "[a]s a direct and proximate result of [EMC's] misrepresentations of facts," *id.* ¶ 34, and its "failure to state material facts," *id.* ¶ 39, she suffered damages "including but not limited to the threatened loss of her home, late fees, collection costs, interest, and in other manner to be proven at trial," *id.* ¶¶ 34, 39.

EMC counters that it never represented to the plaintiff that the terms of the repayment agreement were negotiable and that it made it clear throughout its dealings with her that the plaintiff would have to make a $2,500 "good faith down payment" before the repayment agreement became effective. EMC's Mot. at 9-13. Lastly, EMC maintains that the plaintiff has

set forth no facts or evidence indicating that she suffered any damages as a result of EMC's actions. *Id.* at 14.

"The invasion of a purely legal right . . . [w]ithout a particularized injury" does not create standing to sue in this court. *Williams v. Purdue Pharma Co.*, 297 F. Supp. 2d 171, 178 (D.D.C. 2003). To obtain standing to sue for a violation of the DCCPPA, a plaintiff "must have suffered damage as a result of the use or employment of an unlawful trade practice." *Osbourne v. Capital City Mortgage Corp.*, 667 A.2d 1321, 1330 (D.C. 1995) (quoting D.C. CODE § 28-3905(k)(1) (internal quotation marks and alterations omitted)); *see also Jackson v. ASA Holdings, LLC*, 2010 WL 4449367, at *6 (D.D.C. Nov. 8, 2010) (granting the defendants' motion to dismiss because the plaintiff failed to demonstrate injury and thus standing under the DCCPPA by making the "conclusory assertions" that "as a result of the [d]efendants' misrepresentations, she 'suffered damages, including, but not limited to the loss of her property, late fees, collection costs, and interest'"); *Hoyte v. Yum! Brands, Inc.*, 489 F. Supp. 2d 24, 29 (D.D.C. 2007) (holding that the plaintiff had no standing to pursue his DCCPPA claim when he alleged that the defendant failed to disclose a material fact in violation of the DCCPPA, but made no claim of injury); *Williams*, 297 F. Supp. 2d at 178 (explaining that, despite its broad language, the DCCPPA "[does] not change the requirements for standing under D.C. law").

According to the plaintiff, she suffered damages in the way of fees, costs and interest along with the threatened loss of her home, and she is seeking "actual damages, statutory and treble (3x) damages, substantial punitive damages . . . pre and post judgment interest, attorney's fees and costs." *Id.* ¶ 25; *see also id.* ¶¶ 34, 39, 49, 54, 59. She reiterates this request in her opposition to the defendants' motions to dismiss but does not further clarify her damages request. *See* Pl.'s Opp'n at 6. The plaintiff has not, therefore, set forth any facts demonstrating

any correlation between her claimed damages and EMC's alleged DCCPPA violations.  *See generally* Compl.; Pl.'s Opp'n.  For example, the plaintiff has not offered any evidence to indicate that EMC's actions caused her to miss payments under the repayment agreement thereby leading to late fees, collection costs or interest.  *See generally* Compl.; Pl.'s Opp'n.  Accordingly, because the plaintiff has failed to establish damages and thus standing, the court grants EMC's motion for summary judgment as to counts one and two.  *See Jackson*, 2010 WL 4449367, at *6.

### C.  The Court Grants Rosenberg's Motion for Summary Judgment[1]

The plaintiff alleges that Rosenberg made false, misleading or deceptive representations in its notice in violation of the FDCPA because its notice implied that Rosenberg could continue with the collection of the debt after the plaintiff disputed it.  Compl. ¶ 52.  The plaintiff further alleges that Rosenberg violated the FDCPA when it failed to "cease and desist in collection efforts" after the plaintiff disputed her debt.[2]  Compl. ¶ 47.

Rosenberg argues that there is no evidence that it took "any action to 'continue collection activities' after the [p]laintiff allegedly sent notification that she was disputing the debt."  Rosenberg's Mot. at 11.  It also claims that the language in the notice comports with the

---

[1] Unlike the DCCPPA, "actual damages are not required for standing under the FDCPA."  *Miller v. Wolpoff & Abramson, LLP*, 321 F. 3d 292, 307 (2d Cir. 2003).

[2] Rosenberg has challenged all of the plaintiff's claims against it as stated in counts three through five of the plaintiff's complaint.  *See generally* Rosenberg's Mot.  In count five, the plaintiff alleges that Rosenberg violated the FDCPA by using "oppressive and abusive debt collection practices."  *Id.* at 13.  In her opposition to Rosenberg's motion for summary judgment, however, the plaintiff does not address this claim.  *See generally* Pl.'s Opp'n.  Accordingly, the court grants as conceded Rosenberg's motion for summary judgment as to count five.  *See Lytes v. Dist. of Columbia Water & Sewer Auth.*, 572 F.3d 936, 943 (D.D.C. 2009) (affirming the district court's decision to treat as conceded the defendant's motion for summary judgment because, although the plaintiff filed an opposition, he did not "designat[e] and referenc[e] triable facts accompanied by appropriate references to the record" (internal citations omitted)).

requirements of the FDCPA.  *Id*.  In response, the plaintiff concludes, without explanation, that Rosenberg "did not cease and desist in its collection activities."  Pl.'s Opp'n at 8.

The court first notes that, although the notice did contain the phrase "the foreclosure proceeding will continue in the interim," Notice at 2, when read in context, "the interim" clearly refers to the time it would take to work out a payment agreement if the debtor was not disputing the debt, rather than the time it would take to verify the debt, *id*.[3]  Nothing in the FDCPA requires that a foreclosure sale be halted if a debtor does not seek verification of or otherwise dispute the debt.  *See* 15 U.S.C. §§ 1692 *et seq*.  A debtor may concede the debt and enter into an agreement with the debt collector, but such a concession will not necessarily halt foreclosure proceedings.  *See generally id*.  Accordingly, nothing about the notice itself implies that Rosenberg would or did continue collection activities after the plaintiff sought verification of the debt.  *See generally* Notice.

Second, although the plaintiff generally alleges that Rosenberg improperly continued with foreclosure proceedings despite the fact that she sought verification of the debt, *see* Compl.

---

[3] The relevant portion of the Notice reads

> If you notify this office in writing within the thirty (30) period, that the debt or any portion thereof is disputed or request the name and address of the original creditor, we shall cease collection of the debt until we obtain verification of the debt or ascertain the name and address of the original creditor.  A copy of such debt verification and/or name and address of the original creditor will be mailed to you.
>
> Your failure to contest the validity of the debt under the Act may not be construed by any Court as an admission of liability.
>
> YOU MAY BE ELIGIBLE TO ENTER INTO A WORKOUT TO PAY YOUR DELINQUENCY OVER A PERIOD OF TIME.  PLEASE CONTACT THE PARTY LISTED BELOW IMMEDIATELY IF YOU ARE INTERESTED TO SEE IF YOU QUALIFY FOR THIS PROGRAM.  THE FORECLOSURE PROCEEDING WILL CONTINUE IN THE INTERIM.

Notice at 1-2 (emphasis in original).

¶ 11; Pl.'s Opp'n at 8, she does not provide any evidence to support this allegation, *see generally* Compl.; Pl.'s Opp'n. Such broad, unsupported allegations are insufficient to survive summary judgment. *See Wolkow v. Scottsdale Collection Serv., LLC*, 2010 WL 3834598, at *3 (D. Ariz. Sept. 24, 2010) (explaining that an FDCPA plaintiff's "bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment" (citing *Anderson*, 477 U.S. at 247-48)); *see also Thompson v. Ashe*, 250 F.3d 399, 405 (6th Cir. 2001) (stating that "[t]he party opposing the [summary judgment] motion may not rely solely on the pleadings"); *Wolfe v. GC Servs. Partnership-Delaware*, 2009 WL 230637, at *12 (E.D. Mich. Jan. 30, 2009) ("In responding to a motion for summary judgment, the opposing party cannot merely rest upon the allegations contained in his pleadings and, instead, he must submit evidence demonstrating that material issues of fact exist."). Accordingly, because the plaintiff failed to produce any evidence demonstrating a genuine dispute as to any material fact, the court grants Rosenberg's motion for summary judgment. *See Greene*, 164 F. 3d at 675 (holding that because the plaintiff failed to substantiate her claim with "supporting facts," she could not overcome the defendant's motion for summary judgment).

## IV. CONCLUSION

For the foregoing reasons, the court grants EMC's motion for summary judgment and grants Rosenberg's motion for summary judgment. An Order consistent with this Memorandum Opinion is separately and contemporaneously issued this 2nd day of March 2011.

RICARDO M. URBINA
United States District Judge